# Moorhead *versus* Gibson.

1. A contract to make title to real estate by a judicial sale contemplates no time for its completion inconsistent with the due course of the process of the law.

2. A contract to make title to real estate by judicial sale, provided it did not sell at more than $24,500, is not cancelled by a sale at a higher price than that, provided the bid is not made good, and the property returned unsold for want of buyers.

IN EQUITY. Bill for a specific performance of contract to buy real estate.

The opinion of the court was delivered March 6th, 1856, by

LOWRIE, J.—Laying aside the matters that are unimportant, we find that the plaintiffs who had judgments that could command the title to a farm of one William Eberhart, contracted with the defendant that he would procure it to be sold at sheriff's sale, and would buy it in if it should not be bid up to exceed $24,500, and if they should get it at a price not exceeding that sum, they would convey it to the defendant, and he agreed to purchase it at the price of $23,500, and if the sale should be consummated to another at a higher bid than $24,500, then the plaintiffs were to pay the defendant $1,000, as liquidated damages.

It is proper here to notice that the parties contracted for a title by means of a judicial sale, and are of course presumed to have had in contemplation no time for its completion that was inconsistent with the course of the process.

There was a sheriff's sale of the property at the earliest possible time, and at a price exceeding $24,500; but the bid was not made good, and the property was returned unsold for want of buyers. Did this cancel the contract of the parties? We think not, for the contract was to procure a sale of the property, which means an effectual one; one, that would give the defendant the title to the land or the $1000 damages. Such an one had not been had, and yet the plaintiffs were chargeable with no fault or delay. They were still bound to procure the title, and the defendant to take it. They did procure it by another sale at the next term, and tendered it to him without any delay other than is involved in the due course of law, and the defendant refused to accept it. In fact, the second sale took place at the very term at which it would have been first offered had it not been for the consent of the defendant in the judgments that it might be sold on a *fi. fa.*

It is supposed that because at the first sale, and when the

[Aldrich *v.* Jessup et al.]

biddings had run over the intended limit, the parties made a new arrangement so as to buy at a higer price, which also failed, therefore that the original contract is at an end. We cannot so regard this part of the transaction. It was made entirely for the benefit of the defendant, and was an ineffectual attempt to get him the property. He seemed likely to fail in getting it under his contract with the plaintiffs, and they merely aided him in another expedient. It was an attempted and fruitless substitute for the principal arrangement at a time when it appeared likely to prove ineffective by reason of its inherent conditions. But the expedient did not answer its purpose, and it goes for nothing. It was not intended to cancel the original contract, but to strengthen it in a point supposed to be weak. It did not answer its purpose, and the result shows that it was not needed.

Mr. Moorhead may have supposed the contract at an end by the first sale; but we cannot treat his telegraphic dispatch, asking the defendant what he would give for the farm if he could get it for him, as a release of the contract. We infer that this was before the default of the first buyer was ascertained, for it was a week after the sale, and six weeks before the issuing of the second writ. It seems therefore to indicate a thought of getting a title for this defendant from the purchaser at the first sale. It was not even the expression of an opinion that the contract was cancelled by the ineffectual sale.

Let the decree be drawn in favor of the plaintiff, with costs.

Woodward, J., dissented.

Knox and Black, JJ., were absent.